No. 22-15997

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DE WITT LAMAR LONG,

*Plaintiff-Appellant,*

v.

SGT. SUGAI, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Hawaiʻi
Honorable J. Michael Seabright, Chief United States District Judge
(Civil No. 1:19-CV-00235-JMS-RT)

## DEFENDANTS-APPELLEES RODNEY SUGAI AND
## LYLE ANTONIO'S ANSWERING BRIEF

ANNE E. LOPEZ                    7609
Attorney General of Hawaiʻi

CARON M. INAGAKI                 3835
JENNIFER H. TRAN                 11590
Deputy Attorneys General
Department of the Attorney General
State of Hawaiʻi
425 Queen Street
Honolulu, Hawaiʻi 96813
Telephone:  (808) 586-1317
E-Mail: caron.m.inagaki@hawaii.gov
            jennifer.h.tran@hawaii.gov

Attorneys for Defendants-Appellees
Rodney Sugai and Lyle Antonio

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ..................................................................... iii

I.      INTRODUCTION ...........................................................................1

II.     COUNTERSTATEMENT OF JURISDICTION ...............................2

III.    COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR
        REVIEW ........................................................................................2

IV.     CONCISE COUNTERSTATEMENT OF THE CASE ....................3

        A.      Plaintiff's Religious Practices at HCF ...............................3

        B.      Procedural History...............................................................7

V.      SUMMARY OF ARGUMENT ........................................................9

VI.     COUNTERSTATEMENT OF THE STANDARDS OF REVIEW.............10

        A.      Screening Prisoner Complaints ........................................10

        B.      Summary Judgment............................................................12

        C.      Findings of Fact.................................................................13

        D.      Harmless Error ..................................................................14

VII.    ARGUMENT.................................................................................15

        A.      Dismissal of Plaintiff's request for injunctive relief at the screening
                stage was proper ...............................................................15

                1.      Any error in dismissal of Plaintiff's request for injunctive relief
                        was harmless ..........................................................17

        B.      Dismissal of Plaintiff's First Amendment claims against COS Antonio
                and Sergeant Lee at summary judgment was proper .........................18

1. Dismissal of Plaintiff's retaliation claim against COS Antonio was proper .......................................................................18

2. Any error in dismissal of Plaintiff's retaliation claim against COS Antonio was harmless .......................................................23

3. Dismissal of Plaintiff's free exercise claims against Sergeant Lee was proper ...........................................................................23

C. Dismissal of Plaintiff's remaining claims against Sergeant Sugai and COS Antonio was proper .....................................................29

1. Sergeant Sugai did not violate Plaintiff's First Amendment right to freely exercise his religion ...........................................29

2. COS Antonio did not violate Plaintiff's First Amendment right to freely exercise his religion ....................................................32

3. Sergeant Sugai did not retaliate against Plaintiff.....................35

VIII. CONCLUSION...............................................................................36

STATEMENT OF RELATED CASES ...................................................37

CERTIFICATE OF COMPLIANCE FOR BRIEFS ................................38

CERTIFICATE OF SERVICE ..............................................................39

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. City of Bessemer City, N.C.*,

    470 U.S. 564 (1985).......................................................................14

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009).......................................................................11

*Barnett v. Centoni*,

    31 F.3d 813 (9th Cir. 1994) ...........................................................12

*Beard v. Banks*,

    548 U.S. 521 (2006).......................................................................26

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 554 (2007).......................................................................11

*Bretz v. Kelman*,

    773 F.2d 1026 (9th Cir. 1985) .......................................................11

*Brown-El v. Delo*,

    969 F.2d 644 (8th Cir. 1992) .........................................................26

*Cervantes v. United States*,

    330 F.3d 1186 (9th Cir.2003) ........................................................11

*Cooper v. Pickett*,

    137 F.3d 616 (9th Cir. 1997) ................................................. 10, 12

*Couch v. Jabe*,

    479 F. Supp. 2d 569 (W.D. Va. 2006)................................... 18, 26

*Crump v. Best*,

    No. 10-13787, 2012 WL 1056806 (E.D. Mich. Mar. 5, 2012) ....................27

*Green v. Tudor*,

    685 F. Supp. 2d 678 (W.D. Mich. 2010).......................................27

*Haddad v. Lockheed Cal. Corp.*,

    720 F.2d 1454 (9th Cir. 1983) ........................................................14

*Hamm v. DeKalb Cty.*,

    774 F.2d 1567, 1575 (11th Cir. 1985) *cert. denied*, 475 U.S. 1096 (1986) ..26

*Hebbe v. Pliler*,

    627 F.3d 338 (9th Cir. 2010) ..........................................................11

*Jaami v. Compton*,

    182 F.3d 917 (6th Cir.1999) ..........................................................27

*Johnson v. U.S. Postal Serv.*,

    756 F.2d 1461 (9th Cir. 1985) ........................................................14

*Kruso v. Int'l Tel. & Tel. Corp.*,

    872 F.2d 1416 (9th Cir. 1989) *cert. denied*, 496 U.S. 937 (1990) ...............12

*Kwanzaa v. Mee*,

    No. 09–5132 (SRC), 2011 WL 2580396 (D.N.J. June 28, 2011) ................27

*Lacey v. Maricopa Cty.*,

    693 F.3d 896 (9th Cir. 2012) ..........................................................28

*Laufgas v. Speziale*,

    263 Fed. App'x. 192 (3rd Cir. 2008) ...............................................26

*LeMaire v. Maass*,

    12 F.3d 1444 (9th Cir. 1993) ..........................................................26

*Long v. Chaplain Charles Noland Jr., et al.*,

    No. 1:21-CV-00205-HG-RT (D. Haw.) ...........................................17

*Lopez v. Smith*,

    203 F.3d 1122 (9th Cir. 2000) ........................................................10

*Malik v. Brown*,

    16 F.3d 330 (9th Cir. 1994) ...........................................................24

iv

*McShane v. United States*,

    366 F.2d 286 (9th Cir. 1966) ...........................................................17

*Miller v. Fairchild Indus., Inc.*,

    797 F.2d 727 (9th Cir. 1986) ...........................................................28

*O'Lone v. Estate of Shabazz*,

    482 U.S. 342 (1987).........................................................................23

*Obrey v. Johnson*,

    400 F.3d 691 (9th Cir. 2005) ........................................... 14, 17, 23

*Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*,

    992 F.3d 893 (9th Cir. 2021) ........................................... 13, 20, 22

*Palmer v. Hoffman*,

    318 U.S. 109 (1943).........................................................................15

*Poindexter v. Lee*,

    No. 7:17CV00386, 2018 WL 3617890 (W.D. Va. Jul. 30, 2018) ......... 18, 26

*Pratt v. Rowland*,

    65 F.3d 802 (9th Cir. 1995) ................................................. 19, 22

*Price v. Johnston*,

    334 U.S. 266 (1972).........................................................................23

*Resnick v. Hayes*,

    213 F.3d 443 (9th Cir. 2000) ......................................................12

*Rhodes v. Robinson*,

    408 F.3d 559 (9th Cir. 2005) ......................................................19

*Rizzo v. Dawson*,

    778 F.2d 527 (9th Cir. 1985) ......................................................19

*Romero v. Kitsap Cty.*,

    931 F.2d 624 (9th Cir. 1991) ......................................................28

v

*Ruffin v. Hinkley*,

    No. 2:17-cv-00151-NT, 2017 WL 3670659 (D. Maine Aug. 25, 2017) 18, 27

*Saddiq v. Trinity Services Group*,

    198 F. Supp. 3d 1051 (D. Ariz. 2016) ............................................................18

*San Jose Christian Coll. v. City of Morgan Hill*,

    360 F.3d 1024 (9th Cir. 2004) ....................................................................25

*Sandin v. Conner*,

    515 U.S. 472 (1995)............................................................................ 19, 22

*Sandoval v. Las Vegas Metro Police Dep't*,

    756 F.3d 1154 (9th Cir. 2014) ....................................................................28

*Sawyer v. Jefferies*,

    315 Fed. App'x 31 (10th Cir. 2008) ............................................................26

*Shakur v. Schriro*,

    514 F.3d 878 (9th Cir. 2008) ................................................................ 24, 26

*Sharkey v. O'Neal*,

    778 F.3d 767 (9th Cir. 2015) ......................................................................12

*Shepard v. Quillen*,

    840 F.3d 686 (9th Cir. 2016) ......................................................................21

*Simon v. Hartford Life, Inc.*,

    546 F.3d 661 (9th Cir. 2008) ........................................................ 11, 16, 17

*Smolen v. Deloitte, Haskins & Sells*,

    921 F.2d 959 (9th Cir. 1990) ......................................................................12

*Soto v. Sweetman*,

    882 F.3d 865 (9th Cir. 2018) ................................................................ 13, 20

*Sutton v. Atlantic Richfield Co.*,

    646 F.2d 407 (9th Cir. 1981) ......................................................................14

*Sylvia Landfield Tr. v. City of L.A.*,

    729 F.3d 1189 (9th Cir. 2013) ........................................................12

*Thomas v. Review Bd. of the Ind. Emp. Sec. Div.*,

    450 U.S. 707 (1981)........................................................................25

*Turner v. Safley*,

    482 U.S. 78 (1987)................................................................. 24, 26

*United States v. United States Gypsum Co.*,

    333 U.S. 364 (1948)........................................................................14

*United States v. Yellow Cab Co.*,

    338 U.S. 338 (1949)........................................................................14

*Warsoldier v. Woodford*,

    418 F.3d 989 (9th Cir. 2005) ........................................................25

*Watison v. Carter*,

    668 F.3d 1108 (9th Cir. 2012) ............................................... 10, 12

*White v. Geren*,

    310 F. App'x 159 (9th Cir. 2009)..................................................17

*Zenith Radio Corp. v. Hazelvine Research, Inc.*,

    395 U.S. 100 (1969)........................................................................14

**Federal Rules of Civil Procedure (FRCP)**

FRCP R. 103(a)......................................................................................14

FRCP R. 23(a)(4) ..................................................................................17

FRCP R. 52(a)(6) ..................................................................................13

FRCP R. 56(c).......................................................................................12

FRCP R. 61 ...........................................................................................14

**United States Code (U.S.C.)**

28 U.S.C § 1915(e)(2)...........................................................................10

28 U.S.C. § 1654.................................................................................16

28 U.S.C. § 1915................................................................................17

28 U.S.C. § 1915A..............................................................................17

28 U.S.C. § 1915A(a)..........................................................................10

## I.    INTRODUCTION[1]

This appeal concerns a prisoner civil rights complaint asserted by Plaintiff De Witt Lamar Long ("Plaintiff") against Defendants Sergeant Rodney Sugai, Sergeant Wyatt Lee, and Chief of Security ("COS") Lyle Antonio (collectively "Defendants"), in their individual capacities, for alleged violations of his First and Fourteenth Amendment rights while he was incarcerated at Halawa Correctional Facility ("HCF").[2]  Plaintiff, a practicing Muslim, alleged that:

- Sergeant Sugai violated his constitutional right to freely exercise his religion by denying him religious meals;

- Sergeant Sugai retaliated against him by sending him back to his housing unit to eat after he filed a series of prison grievances;

- Sergeant Lee violated his constitutional right to freely exercise his religion by refusing to heat up his meals or provide him with hot meals during Ramadan; and

- COS Antonio violated his constitutional right to freely exercise his religion by denying him access to Islamic prayer services.

---

[1] Citations to Plaintiffs' Excerpts of Record are formatted as [Vol.#]-ER-[Page#] and to Defendants' Supplemental Excerpts of Record as SER-[Page#].

[2] *See State v. Long*, 459 P.3d 791 (Haw. App. 2020) (affirming judgment of conviction and imposition of "extended life sentences consecutive to a life sentence Long was serving in another conviction"), *cert. rejected* in *State v. Long*, No. SCWC-17-0000385, 2020 WL 4436450 (Haw. Aug. 3, 2020).

At summary judgment, the District Court dismissed Plaintiff's claims against Sergeant Lee finding that no actionable claim existed. 1-ER-14–51. After holding a two-day bench trial, the District Court issued its Findings of Fact and Conclusions of Law in favor of Defendants concluding that Plaintiff failed to prove his free-exercise and retaliation claims against Defendants. *Id.* at 52–88. The District Court's Judgment in favor of Defendants was proper for the reasons stated in its Findings of Fact and Conclusions of Law and Plaintiff's arguments on appeal do not support reversal. On these bases, this Court should affirm the District Court's Judgment.

## II. COUNTERSTATEMENT OF JURISDICTION

This prisoner civil rights complaint was brought pursuant to 48 United States Code ("U.S.C.") § 1983 and the underlying grounds for the District Court's subject-matter jurisdiction was 28 U.S.C. § 1331. This Court's appellate jurisdiction is based upon 28 U.S.C.§§ 1291. After the District Court's Judgment was entered on June 21, 2022, Plaintiff filed a Notice of Appeal on July 6, 2022. 1-ER-5.

## III. COUNTERSTATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court clearly erred in dismissing Plaintiff's claims against the Defendants in their official capacity at the screening stage

2

because Plaintiff could not obtain prospective relief for himself or on behalf of any other prisoners.

2.       Even if the District Court erred in dismissing Plaintiff's claims against Defendants in their official capacity, whether such error was harmless because at trial, the District Court found that there was no religious discrimination or retaliation against Plaintiff.

3.       Whether the District Court properly dismissed Plaintiff's free exercise claims against Sergeant Lee and retaliation claims against COS Antonio at summary judgment.

4.       Whether the District Court's properly found that Sergeant Sugai did not violate Plaintiff's constitutional right to freely exercise his religion or retaliate against him and that COS Antonio did not violate Plaintiff's right to freely exercise his religion.

## IV.   CONCISE COUNTERSTATEMENT OF THE CASE

### A.   Plaintiff's Religious Practices at HCF

During the relevant period between 2016 and 2017, Plaintiff was an inmate at HCF and a practicing Muslim.  1-ER-56–57.  Plaintiff was housed at HCF in the medium-security facility ("MF") between December 2015 until May 8, 2017, when he was transferred to the high-security facility ("HF").  *Id.* at 57.

3

Soon after his arrival at HCF in December 2015, Plaintiff requested to be placed on a "non-pork diet" to accommodate his Islamic faith. *Id.* at 58. Plaintiff's request was submitted and jointly approved by the Food Service Manager Brian Watanabe, Program Control Administrator Gary Kaplan, and Chaplin Charles Noland Jr. on January 6, 2016. *Id.* For approximately two to three weeks following the approval, Plaintiff received accommodating religious meals without issue. *Id.*

In early 2016, Plaintiff claims he was denied at least one non-pork meal. *Id.* at 59. Sergeant Sugai was the Adult Corrections Officer ("ACO") assigned to work behind the kitchen window during that period time. Plaintiff alleged that Sergeant Sugai disregarded the posted meal-accommodations list and denied him non-pork meals. *Id.* at 59–60. Plaintiff also filed a prison grievance against Sergeant Sugai for these alleged denials. *Id.* at 60. The District Court concluded that "Plaintiff failed to meet his burden of showing that [Sergeant] Sugai acted or failed to act in a way that substantially burdened Plaintiff's religious practice of maintaining a non-pork diet." *Id.* at 75. The District Court explained that credible evidence demonstrated Sergeant Sugai "was merely relaying the message that Plaintiff was not on the meal-accommodations list, a list that [Sergeant] Sugai neither compiled nor modified." *Id.*

4

Sometime in February 2016, Plaintiff proceeded to the MF kitchen to obtain his non-pork meal but instead received a meal containing pork remnants. *Id.* at 61–62. Plaintiff alerted the ACO on duty and was directed to pick up an alternative vegetarian meal tray, which although it came pre-wrapped, was alleged to have contained pork strands. *Id.* at 62. Plaintiff claims that as a result of the meal, he became sick and received treatment for stomach issues from the medical unit. *Id.* Plaintiff alleged that Sergeant Sugai directed kitchen-inmate workers to contaminate Plaintiff's meal tray with pork. *Id.* The District Court again found that Plaintiff failed to prove that Sergeant Sugai substantially burdened his religious exercise. *Id.* at 76. Specifically, the District Court explained that "the evidence presented at trial clearly established that [Sergeant] Sugai did not direct kitchen workers to sabotage Plaintiff's meal; rather, the evidence established that there was likely cross-contamination between pork-based foods and Plaintiff's vegetarian meal unattributable to [Sergeant] Sugai." *Id.*

Beginning in July 2016, Plaintiff was occasionally made to pick up his non-pork meal from the MF kitchen and eat in his housing unit. *Id.* at 64. Plaintiff alleged that he was subjected to Sergeant Sugai's own vindictive version of "meals to module," a program typically reserved for inmates suffering from physical or mental disabilities which prevented them from walking to the cafeteria, for approximately six to eight months. *Id.* at 64–65. However, based on the evidence,

5

the District Court found that Sergeant Sugai ordered Plaintiff back to his housing unit only "two to three times at most" and he had done so because Plaintiff was being "argumentative" and "disruptive" with kitchen staff. *Id.* at 65. The District Court concluded that Sergeant Sugai's orders were "justified and lawful" because he sent Plaintiff back to his housing unit "in order to deescalate conflicts between Plaintiff and kitchen staff" and "not because of some vindictive motive." *Id.* at 66, 77.

On May 8, 2017, Plaintiff was transferred from MF to HF. *Id.* at 68. As a result of the transfer, Plaintiff was unable to attend Friday Jumu'ah services because it was not being offered at HF. *Id.* at 68–69. Then-Warden Scott Harrington ordered that Sergeant Sugai and Plaintiff be segregated to create a "cooling off period" between them and to allow adequate time to investigate Plaintiff's grievances. *Id.* at 69. COS Antonio carried out the order by transferring Plaintiff to HF and leaving Sergeant Sugai at MF, given the administrative roadblocks impeding his ability to move Sergeant Sugai. *Id.*

After Plaintiff's transfer, he filed an inmate grievance against COS Antonio for lack of Jumu'ah prayer services in HF along with an inmate request to attend Jumu'ah prayer services at MF. *Id.* at 70. Plaintiff alleged that COS Antonio violated his right to freely exercise his religion by denying him access to Islamic prayer services. *Id.* at 53. The District Court ultimately found that COS Antonio's

6

transfer of Plaintiff to HF "was not punitive in nature" and was actually "supported by valid and rational reasoning[.]" *Id.* at 69. This reasoning included "the contract-bargaining agreement that governed [Sergeant] Sugai's employment and how it required a staff investigation before [Sergeant] Sugai could be transferred [and] how there needed to be corroboration of Plaintiff's harassment allegations in order to justify a staff investigation into the transfer of [Sergeant] Sugai." *Id.* at 69–70. The District Court found that COS Antonio "had no ability as [COS] to create or maintain religious services" and that his involvement with relation to religious services was for "security matters." *Id.* at 70. The District Court also found COS Antonio's testimony "as to the infeasibility of transporting Plaintiff to the [MF] to attend that facility's Jumu'ah prayer services" due to personnel commitments to be true and accurate. *Id.* at 71.

### B. Procedural History

On May 6, 2019, Plaintiff initiated the underlying prisoner civil rights Complaint pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Sugai, COS Antonio, Sergeant Lee, Case Manager Torres, and Inmate Grievance Officer ("IGO") John or Jane Does 1–50, in their official and individual capacities, alleging that Defendants violated his rights under the First and Fourteenth Amendments. *Id.* at 54–55; 2-ER-91–95. Plaintiff's Complaint requested $77,000.00 in monetary damages and injunctive relief allowing inmates held at HF

7

to attend Friday Islamic services and requiring meals to be served hot during Ramadan.  2-ER-105.

By its Order Dismissing Complaint in Part and Directing Service filed May 23, 2019, the District Court dismissed with prejudice Plaintiff's claims for injunctive relief and damages against Defendants in their official capacities.  1-ER-3, 7.  The Order cited the Eleventh Amendment for barring suits for money damages against state officials acting in their official capacities and reasoned that Plaintiff did not allege that he was currently denied religious accommodations and that he could not seek prospective injunctive relief on behalf of other prisoners.  1-ER-7.  The Order also dismissed without prejudice Plaintiff's claims against Case Manager Torres and IGO John or Jane Does 1–50 for failure to state a colorable claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.[3]  *Id.* at 9–11.  The Order permitted Plaintiff's claims against Defendants Sergeant Sugai, COS Antonio, and Sergeant Lee to proceed.  *Id.* at 11.

The remaining Defendants filed their Second Motion for Summary Judgment on September 1, 2020.  *Id.* at 15.  On December 18, 2020, the District Court issued its Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment granting Defendants' motion with respect to the retaliation claim against COS Antonio and all claims against Sergeant Lee and denying all

---

[3] Plaintiff is not appealing the dismissal of these claims.

8

claims against Sergeant Sugai and the free-exercise claim against COS Antonio. *Id.* at 27–51.

From May 17 to 18, 2022, the District Court held a bench trial with live testimony presented from six witnesses and 18 admitted exhibits. *Id.* at 52–53. The District Court issued its Findings of Fact and Conclusions of Law on June 21, 2022, holding that credible evidence established that Plaintiff failed to prove his remaining free exercise claims against Sergeant Sugai and COS Antonio and his retaliation claims against Sergeant Sugai. *Id.* at 54. The District Court entered Judgment in favor of Defendants on June 21, 2022, and Plaintiff subsequently filed a notice of appeal on July 6, 2022. *Id.* at 89; 2-ER-179.

## V.    SUMMARY OF ARGUMENT

Based on the evidence adduced at trial, the District Court's properly dismissed Plaintiff's: (1) request for injunctive relief at the screening stage; (2) First Amendment retaliation claim against COS Antonio and free exercise claim against Sergeant Lee at summary judgment; and (3) remaining free exercise and retaliation claims against Sergeant Sugai and free exercise claims against COS Antonio at trial. This Court should affirm the District Court's decision.

## VI.   COUNTERSTATEMENT OF THE STANDARDS OF REVIEW

### A.   Screening Prisoner Complaints

28 U.S.C. § 1915(e)(2) requires a court to dismiss an action when it fails to state a claim or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C § 1915(e)(2).  Its accompanying statute, 28 U.S.C. § 1915A, governs the procedure for screening prisoner complaints and provides that "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Grounds for dismissal of a complaint mirrors § 1915(e)(2).  *Id.* § 1915(A)(b); *see* 28 U.S.C. § 1915(e)(2).

The standard for dismissal under § 1915(e)(2)(B)(ii) and § 1915A(b) is the same standard for failure to state a claim under Rule 16(b)(6) of the Federal Rules of Civil Procedure ("FRCP").  *Watison v. Carter*, 668 F.3d 1108, 1112 (9th. Cir. 2012)) (citing *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000)).  Similarly, "[u]nder § 1915A, when determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."  *See id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997)).

10

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing *Twombly*, 550 U.S at 556). "All allegations of material fact shall be taken as true and construed in the light most favorable to the nonmoving party." *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (citing *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir.2003)).

A court must "construe [a *pro se* plaintiff's] pleadings liberally and . . . afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). If a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir.

2013). A district court's decision to not grant leave to amend is reviewed for abuse of discretion. *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015).

Dismissal of a *pro se* prisoner's complaint within the context of the screening process required under 28 U.S.C. §§ 1915(e)(2) and 1915A is reviewed de novo. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citing *Cooper*, 137 F.3d at 623); *Watison*, 668 F.3d at 1112 ("review[ing] the dismissal of a complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) de novo.").

### B. Summary Judgment

A court reviews a district court's grant of summary judgment de novo. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (citing *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1451 (9th Cir. 1989) *cert. denied*, 496 U.S. 937 (1990)). "Summary judgment is appropriate if the evidence, read in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (citing FRCP R. 56(c)).

If the party moving for summary judgment does not have the ultimate burden of persuasion on the ultimate issue, once the movant meets its initial burden to show that there is no genuine issue of material fact, the burden of production shifts to the nonmovant "who must go beyond the pleadings and by her own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation marks and citations omitted). The nonmoving party cannot meet this burden by offering only "the mere existence of a scintilla of evidence" or some "metaphysical doubt" as to the material facts at issue. *Id.* "It must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor, assuming that all justifiable inferences are drawn in its favor." *Id.* at 898 (internal quotation marks and citation omitted).

Although *pro se* inmates are exempted from strict compliance with the summary judgment rules, they are not exempted from all compliance. *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). This Court has specifically held that *pro se* inmates are not released from the obligation to identify or submit some competent evidence to refute a motion for summary judgment. *Id.*

### C. Findings of Fact

Under Rule 52(a)(6), FRCP, "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." FRCP R. 52(a)(6). "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly

13

have in mind that their function is not to decide factual issues de novo." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969). Appellate courts may not set aside findings of fact unless "on the entire evidence [it] is left with the definite and firm conviction that a mistake has been committed." *Johnson v. U.S. Postal Serv.*, 756 F.2d 1461, 1464 (9th Cir. 1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948) and *Sutton v. Atlantic Richfield Co.*, 646 F.2d 407, 412 (9th Cir. 1981)). Moreover, any "[c]redibility determinations are insulated from appellate review." *Id.* (citing *Sutton*, 646 F.2d at 411). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).

### D. Harmless Error

It is well recognized that "judicial error alone does not mandate reversal." *Obrey v. Johnson*, 400 F.3d 691, 699 (9th Cir. 2005). Instead, for reversal to be appropriate, a reviewing court "must find that the error affected the substantial rights of the appellant." *Id.* (citing FRCP R. 103(a) and 61). "Just as the verdict in a civil case need only be more probably than not true, so an error in a civil trial need only be more probably than not harmless." *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1459 (9th Cir. 1983). The party "seek[ing] to have a judgment set

aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Palmer v. Hoffman*, 318 U.S. 109, 116 (1943).

## VII. ARGUMENT

### A. Dismissal of Plaintiff's request for injunctive relief at the screening stage was proper

The District Court properly dismissed Plaintiff's request for injunctive relief at the screening stage because Plaintiff failed to allege facts sufficient to show that "he [was] currently being denied accommodations for his religion at HCF." 1-ER-7. The District Court also correctly found that Plaintiff's allegations concerned "events that began and ended approximately two to three years ago" and that Plaintiff could "not seek prospective injunctive relief on behalf of other prisoners." *Id.*

Plaintiff argues that the District Court erred because it "incorrectly conclude[ed] that the constitutional violations [Plaintiff] alleged 'began and ended' before he filed his complaint." OB at 35. Plaintiff asserts that "he sufficiently stated a claim for injunctive relief because he alleged the Defendants instituted policies or procedures that created an ongoing risk of his religious rights being violated." *Id.* And despite asserting a specified time span of violations in his Complaint, Plaintiff reasons that his Complaint "can be fairly read to also allege that he continued to be at ongoing risk of additional violations because of the

15

policies and procedures implemented by Defendants." *Id.* at 35–36. Plaintiff's arguments are unconvincing and lack support.

The District Court's analysis was two-fold. First, Plaintiff failed to allege that he, at the time of the filing of his Complaint, was subjected to any denial of religious accommodations at HCF. 1-ER-7. Plaintiff's Complaint only alleged that Defendants committed various constitutional violations during his incarceration at HCF between February 4, 2016 to June 28, 2017. *Id.* at 98–104. The District Court repeatedly found that the relevant time period for Plaintiff's action was between 2016 and 2017. *See* 1-ER-2, 7, 15, 56. And although a court reviews *pro se* pleadings liberally, it is not required to assume unstated facts or draw unwarranted inferences. *See Iqbal*, 556 U.S. 662, 678–79.

Second, the District Court correctly noted that Plaintiff was not an adequate class representative and therefore did not have standing to assert rights of third parties. 1-ER-7. The general rule establishing the right of an individual to represent oneself in federal courts is contained in 28 U.S.C. § 1654. *Simon*, 546 F.3d at 664; 28 U.S.C. § 1654. "Section 1654 is intended to provide individuals with equal access to the courts by permitting individuals to represent themselves." *Simon*, 546 F.3d at 664; *see* 28 U.S.C. § 1654. Although § 1654 grants *pro se* litigants the ability to bring forth their own actions, "[i]t is well established that the privilege to represent oneself *pro se* provided by § 1654 is personal to the litigant

16

and does not extend to other parties or entities." *Simon*, 546 F.3d at 664 (citing *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966)). This Court has repeatedly held that a *pro se* litigant is not an adequate class representative under Rule 23(a) and neither 28 U.S.C. §§ 1915 nor 1915A authorizes a plaintiff to prosecute an action on behalf of others. *See White v. Geren*, 310 F. App'x 159, 160 (9th Cir. 2009) (citing FRCP R. 23(a)(4) and *McShane*, 366 F.2d at 288); 28 U.S.C. §§ 1915, 1915A. Given these reasons, the District Court properly dismissed Plaintiff's request for injunctive relief at the screening stage.

### 1. Any error in dismissal of Plaintiff's request for injunctive relief was harmless

Even assuming that the District Court erred by dismissing Plaintiff's request for injunctive relief at the screening stage, such error would be harmless because it did not affect Plaintiff's substantive rights. *See Obrey*, 400 F.3d at 699; FRCP R. 61. Plaintiff was not precluded from filing a separate suit to address any alleged ongoing violations of his rights and actually has done so. *See Long v. Chaplain Charles Noland Jr., et al.*, No. 1:21-CV-00205-HG-RT (D. Haw.) (alleging First Amendment free exercise violations regarding Islamic services and Ramadan meals). And testimony elicited at trial by Chaplain Alan Leigh affirmatively supports the notion that Islamic services are currently available to inmates at HCF. *See* 3-ER-373. Chaplain Leigh testified that he would conduct Islamic services if a volunteer is unavailable to conduct the service confirming that Plaintiff is not

17

subjected to any ongoing violation of his constitutional rights. *Id.* at 374. And district courts have repeatedly held that minor disruptions to an inmate's diet, such as being served cold meals during Ramadan, does not amount to a constitutional violation. *See, e.g.*, *Poindexter v. Lee*, No. 7:17CV00386, 2018 WL 3617890 (W.D. Va. Jul. 30, 2018) (dismissing prisoner claim alleging that meals were cold by the time he could eat them during Ramadan); *Couch v. Jabe*, 479 F. Supp. 2d 569, 585 (W.D. Va. 2006) (explaining that appropriate but cold food served during Ramadan did not create a substantial burden on religious exercise); *Saddiq v. Trinity Services Group*, 198 F. Supp. 3d 1051, 1060–61 (D. Ariz. 2016) (upholding state prison's practice of providing cold, "megasack" meal stacks instead of hot meals during Ramadan on equal protection challenge); *Ruffin v. Hinkley*, No. 2:17-cv-00151-NT, 2017 WL 3670659 (D. Maine Aug. 25, 2017) (recommending dismissal where prisoner alleged that he was provided two cold meals daily during Ramadan). Given that any error committed by the District Court would have been harmless, this Court should affirm the District Court's decision.

## B. Dismissal of Plaintiff's First Amendment claims against COS Antonio and Sergeant Lee at summary judgment was proper

### 1. Dismissal of Plaintiff's retaliation claim against COS Antonio was proper

A First Amendment retaliation claim requires "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's

protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The District Court found that Plaintiff satisfied factors (1), (3), and (4). *See* 1-ER-47–48. However, with respect to the second and fifth factors, the District Court correctly found that COS Antonio's action of transferring Plaintiff advanced a legitimate correctional goal of maintaining order and safety within the prison facility, and there was insufficient evidence to suggest that this asserted goal was merely a pretext for retaliation. 1-ER-48–51.

Plaintiff argues that the District Court erred by finding no triable issue of material fact as to whether COS Antonio's action advanced a legitimate correctional goal. OB at 41. This argument lacks merit. "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)). However, even viewing the light most favorable to Plaintiff, he failed to meet his burden.

The District Court considered COS Antonio's reasons for transferring Plaintiff to HF and accorded substantial deference to his judgment. 1-ER-49; *see Pratt* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 481 (1995)) ("In particular, we should 'afford appropriate deference and flexibility' to prison officials in the

19

evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory.").  The District Court reasonably found that maintaining order and safety at HCF was a legitimate penological interest and that "reducing conflict between Plaintiff and [Sergeant] Sugai appear[ed] facially legitimate" and there was "also insufficient evidence in the record to suggest that this reasoning was pretextual."  1-ER-50.

Because COS Antonio met his burden of proving that there no genuine issues of material fact existed, the burden of persuasion shifted back to Plaintiff and required him to "go beyond the pleadings and by [his] own affidavits, . . . [and] designate specific facts showing that there is a genuine issue for trial."  *See Pac. Gulf Shipping Co*., 992 F.3d at 897.  But there are no genuine issues of material fact and Plaintiff cannot create one by assertions alone.  *See* SER-006 ("The declarations of the plaintiff and the defendants are squarely contradictory as to who was responsible.  The allegations in the plaintiff's declaration portray a completely needless disregard to plaintiff's practice and participation in his religion.").  And although Plaintiff is exempted from strict compliance with the summary judgment rules, he is "not released from the obligation to identify or submit some competent evidence to refute a motion for summary judgment."  *See Soto*, 882 F.3d at 872.  The District Court explained that "separating the conflicting parties, as [COS] Antonio did here, is certainly an effective way to achieve this

20

end" and properly found that COS Antonio "demonstrated that his decision to transfer Plaintiff to the [HF] was motivated by a legitimate penological interest[.]" *Id.*

Plaintiff cites *Shepard v. Quillen* requesting reversal of the District Court's finding based upon inconsistencies regarding COS Antonio's decision to transfer Plaintiff to HF. OB at 44–46; *see* 840 F.3d 686 (9th Cir. 2016). However, *Shepard* is distinguishable because there is no evidence of inconsistencies in the reasons for transferring Plaintiff from MF to HF. *See* 840 F.3d at 688–89. Contrary to Plaintiff's assertions, the District Court never found that Plaintiff was transferred to HF because he "posed a threat to security or order." *See* OB at 45. Plaintiff was simply transferred from general population in MF to general population in HF to lower tensions between himself and Sergeant Sugai. 1-ER-50.

The fact that Plaintiff was never formally disciplined or written up for being dangerous or disorderly does not undermine that reasoning. *See* OB at 45. In fact, requiring a prison facility to wait until an inmate is formally disciplined or becomes a significant threat to justify transferring them actually poses a greater threat to security and order. Instead, the District Court correctly found that COS Antonio's action of separating Plaintiff and Sergeant Sugai advanced a legitimate penological interest of maintaining order and safety within HCF. 1-ER-50. The District Court carefully considered COS Antonio's justifications and properly

deferred his judgment. *Id.* at 49–50; *see Pratt* at 807 (quoting *Sandin*, 515 U.S. at 481).

Plaintiff argues that a reasonable juror could find that Sergeant Sugai was primarily responsible for their deteriorating relationship. But that argument does not undermine the legitimacy of the reasons for transferring Plaintiff. OB at 46. Removing either Plaintiff or Sergeant Sugai would have eliminated or deescalated tensions between the parties. And COS Antonio transferred Plaintiff because the administrative burden was lower than transferring Sergeant Sugai. *See* 1-ER-69. Equally unavailing are Plaintiff's references to declarations submitted by other inmates. The declarations address periods outside the scope of Plaintiff's Complaint between April to July of 2019, June to July of 2019, and August to November of 2019. OB at 46; 1-ER-50; *see* 2-ER-163, 166, 169. Drawing any inference from these declarations as to a retaliatory motive on Sergeant Sugai's part is entirely speculative and does not create an issue of material fact. *See Pac. Gulf Shipping Co.*, 992 F.3d at 897 (requiring the designation of specific facts to show a genuine issue). Because Plaintiff failed to prove the absence of any legitimate penological goals and no genuine issues of material fact existed, the District Court properly dismissed Plaintiff's First Amendment retaliation claim against COS Antonio.

## 2.   Any error in dismissal of Plaintiff's retaliation claim against COS Antonio was harmless

The District Court's dismissal Plaintiff's retaliation claims against COS Antonio did not affect his substantive rights. *See Obrey*, 400 F.3d at 699; FRCP R. 61. After a two day bench trial, the District Court properly found that Plaintiff failed to prove his remaining claims against Sergeant Sugai and COS Antonio. 1-ER-54. Even assuming that the District Court erred in finding that Plaintiff's transfer to HF advanced a legitimate penological interest at summary judgment, the District Court expressly found, after completion of trial, that "there was a significant threat of escalatory behavior that needed immediate attention." 1-ER-78. The District Court clearly explained that "[COS] Antonio took that action with a lawful justification: . . . to bring down tensions between Plaintiff and [Sergeant] Sugai–[and] is reasonably related to a legitimate penological interest." *Id.* at 81. Thus, any error committed by the District Court at summary judgment was harmless.

## 3.   Dismissal of Plaintiff's free exercise claims against Sergeant Lee was proper

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1972)). Thus, "[w]hen a

23

prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

An inmate's right to religious freedom is violated only if: (1) the defendant took an adverse action that substantially burdened the practice of the inmate's religion; and (2) the defendant did so *without* any justification reasonably related to legitimate penological interests. *Id.* With respect to the second prong, *Turner* sets forth four factors ("*Turner* factors") that courts must balance in determining whether a prison regulation is reasonably related to a legitimate penological interest:

> (1) Whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it";
> (2) Whether there are "alternative means of exercising the right that remain open to prison inmates";
> (3) Whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally"; and
> (4) Whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives."

*Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (citing *Turner*, 482 U.S. at 89–90).

The Ninth Circuit has held that a substantial burden on religious exercise must impose a "significantly great restriction or onus upon such exercise."

24

*Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (quoting *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)). A substantial burden exists "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs[.]" *Thomas v. Review Bd. of the Ind. Emp. Sec. Div.*, 450 U.S. 707, 717–18 (1981).

The District Court properly dismissed Plaintiff's free exercise claim against Sergeant Lee based upon a finding that no actionable claim existed and that "there [were] no genuine issues of material fact suggesting that [Sergeant] Lee's refusal to warm Plaintiff's meals during Ramadan substantially burdened his right to practice his religion." 1-ER-33. Reviewing Plaintiff's allegations against Sergeant Lee, the District Court correctly noted that "[b]eyond the unappetizing texture of the cold meat, Plaintiff ha[d] not pointed to any adverse consequences to his health or otherwise, stemming from being served cold food." 1-ER-34. Plaintiff contends the District Court erred by applying an improper Eighth Amendment analysis and that a triable issue of material fact existed as to whether Sergeant Lee substantially burdened Plaintiff's religious practices. OB at 47–55. Plaintiff's contention falls flat.

The District Court began its First Amendment free exercise analysis by properly identifying the substantial burden test established by *Shakur* and the

relevant *Turner* factors. *See* 1-ER-29–31 (citing *Shakur*, 514 F.3d at 884 and *Turner*, 482 U.S. at 89–90). And additionally cautioned that "although inferences about disputed facts must be drawn in the prisoner's favor, courts must also accord deference to the views of prison authorities as to 'matters of professional judgment.'" *Id.* at 31 (quoting *Beard v. Banks*, 548 U.S. 521, 529–30 (2006)).

Courts have consistently recognized that prisoners do not have a constitutional right to be served hot meals. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (quoting *Hamm v. DeKalb Cty.*, 774 F.2d 1567 (11th Cir. 1985) *cert. denied*, 475 U.S. 1096 (1986)) ("The fact that the food . . . sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *Laufgas v. Speziale*, 263 Fed. App'x. 192, 198 (3rd Cir. 2008) (citing *Brown-El v. Delo*, 969 F.2d 644, 648 (8th Cir. 1992)) ("there is no constitutional right to hot meals."); *Sawyer v. Jefferies*, 315 Fed. App'x 31 (10th Cir. 2008) (quoting *Laufgas*, 263 Fed. App'x at 198). And as stated above, district courts have repeatedly found that serving cold meals during Ramadan is not a constitutional violation. *See, e.g.*, *Poindexter*, No. 7:17CV00386, 2018 WL 3617890 (dismissing prisoner claim alleging that meals were cold by the time he could eat them during Ramadan); *Couch*, 479 F. Supp. 2d at 585 (explaining that appropriate but cold food served during Ramadan did not create a substantial burden on religious exercise); *Saddiq*, 198 F. Supp. 3d at 1060–61 (upholding state prison's practice of

providing cold, "megasack" meal stacks instead of hot meals during Ramadan on equal protection challenge); *Ruffin*, No. 2:17-cv-00151-NT, 2017 WL 3670659 (recommending dismissal where prisoner alleged that he was provided two cold meals daily during Ramadan).

Notably, courts have expressly held that incidents involving cold meals provided to an inmate during Ramadan are "not sufficiently serious as to constitute a 'substantial burden' on Plaintiff's ability to observe the Ramadan holiday[.]" *See Crump v. Best*, No. 10-13787, 2012 WL 1056806, at *8 (E.D. Mich. Mar. 5, 2012); *see also Green v. Tudor*, 685 F. Supp. 2d 678, 702 (W.D. Mich. 2010) ("Serving prisoners cold meals during Ramadan" did not violate RLUIPA); *Jaami v. Compton*, 182 F.3d 917, at *1 (6th Cir.1999) (dismissing claim based on allegation "that the defendants served the plaintiffs cold breakfast during the Muslim holiday of Ramadan" as frivolous); *Kwanzaa v. Mee*, No. 09–5132 (SRC), 2011 WL 2580396, at *10 (D.N.J. June 28, 2011) (issuing food two hours, and milk 13 hours, before plaintiff could consume it under Ramadan restrictions, resulting in cold/spoiled meals did not rise to a constitutional deprivation or violation of RLUIPA). Given this, the District Court properly concluded that Plaintiff's asserted "facts do not give rise to an actionable claim." 1-ER-33.

Further, Plaintiff has not addressed the District Court's qualified immunity analysis and has therefore waived that argument on appeal. *Miller v. Fairchild*

*Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986) ("The Court of Appeals will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief[.]") (internal citation omitted). The District Court noted that "because the constitutional right to a hot meal is not clearly established, even if a violation was found to have occurred, [Sergeant] Lee would be entitled to qualified immunity." 1-ER-34 n.3 (citing *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991)) (internal citation omitted).

The doctrine of qualified immunity extends to government officials unless "(1) the facts taken in the light most favorable to the party asserting the injury show that the defendants' conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Sandoval v. Las Vegas Metro Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) (internal quotations and citations omitted). A right is clearly established if "it would be clear to a reasonable officer that is conduct was unlawful in the situation he confronted." *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (internal citation omitted). As shown above, various courts have held that serving cold meals during Ramadan does not substantially burden an inmate's religious practices, and thus, at the very least, the right to hot food was not "clearly established." *See id.* Under either analysis, the District Court properly dismissed Plaintiff's First Amendment free exercise claim against Sergeant Lee.

### C. Dismissal of Plaintiff's remaining claims against Sergeant Sugai and COS Antonio was proper

The District Court's Findings of Fact and Conclusions of Law held that "Plaintiff has failed to prove his free-exercise and retaliation claims against Defendants."  1-ER-87.  The District Court opined that "this case appears to be a classic example of the false-cause fallacy, where Plaintiff's link between a premise . . . and conclusion . . . depends on an imagined causal connection that does not, in fact, exist."  *Id.*  But "[t]he credible evidence establishes that Plaintiff failed to prove his free-exercise claims–Defendants either took no faulty action or, if they did, their actions were justified by legitimate penological interests."  *Id.* at 54.  And "[t]he credible evidence also establishes that Plaintiff failed to prove his retaliation claim–[Sergeant] Sugai either took no adverse action or, if he did, his action reasonably advanced legitimate correctional goals."  *Id.*  The District Court correctly dismissed Plaintiff's remaining claims.

### 1. Sergeant Sugai did not violate Plaintiff's First Amendment right to freely exercise his religion

With respect to Plaintiff's free exercise claim against Sergeant Sugai, the District Court properly concluded that Sergeant Sugai's "orders were justified and lawful.  [Sergeant] Sugai sent Plaintiff away from the cafeteria in order to deescalate conflicts between Plaintiff and the kitchen staff.  That justification is reasonably related to legitimate penological interests[.]"  *Id.* at 77.

29

Applying the *Turner* factor analysis, the District Court found, with respect to the first factor, that the government interest behind policy number COR.09.02.5.7[4] was security, a "paramount concern in a prison environment" which "ha[d] a valid, rational connection to COR.09.02.5.7." 1-ER77–78. The District Court correctly found that the second and third *Turner* factors weighed favorably towards Sergeant Sugai because "Plaintiff was nonetheless able to practice his religion through an alternative means that was reasonable under the given circumstances" and that "[a]ccommodating Plaintiff's right to maintain his religious diet without any restrictions . . . would have impacted HCF staff and inmates (including Plaintiff) by threatening their safety and security." *Id.* at 78.

The District Court elaborated that "credible evidence established that Plaintiff was being argumentative and disruptive with the kitchen staff, and that there was a significant threat of escalatory behavior that needed immediate attention." *Id.* And found that Sergeant Sugai met the fourth *Turner* factor because "[t]here were not any ready alternatives other than sending Plaintiff back to his housing unit." *Id.*

Plaintiff argues that the District Court "made a factual finding that [Plaintiff] was a threat to prison security" and because of that "the court reasoned that this

---

[4] COR.09.02.5.7 provides that "[a]ll meals shall be served and eaten in the dining hall unless circumstances require the inmate(s) be served in their respective housing units." *Id.* at 77.

threat meant Defendants' actions were connected to a legitimate penological interest." OB at 57. As to his remaining claims, Plaintiff contends "the court resolved those claims based on the idea that [Plaintiff] posed a 'significant threat' to institutional security at the [MF]." *Id.* at 58. And that "[t]here is no legitimate penological interest in making an inmate return to the cell to eat, or transferring them to a higher-security facility, simply because they complain that their meal violates their religious dietary needs." *Id.* at 61. Plaintiff adds that "there was no evidence at trial that [Plaintiff] posed any threat at all, much less a significant one." *Id.* at 62. Plaintiff's arguments misstate the District Court's findings and are wholly unsupported.

There is no factual finding that Plaintiff was a "'significant threat' to institutional security[.]" The lone mention of a "significant threat" is "there was *a significant threat of escalatory behavior* that needed immediate attention." *Id.* at 78 (emphasis added). If Plaintiff was left in MF, "there would have been a significant impact on institutional security given the rising tensions between [Sergeant] Sugai and Plaintiff." *Id.* at 82. When asked by the District Court for the reasoning behind requiring Plaintiff to eat his meal in his housing unit, Sergeant Sugai answered credibly that "[h]e would be argumentative with the food service staff, not in agreement of what they're providing for him. . . . He debates his issue with the food service staff." 3-ER-324. Given this context, it was not

31

illogical for the District Court to infer that Plaintiff's continued arguments and disagreements with kitchen staff escalated tensions and impacted and disrupted the prison environment. *See Oakland Bulk & Oversized Terminal*, 960 F.3d at 613. The District Court's dismissal Plaintiff's First Amendment free exercise claims against Sergeant Sugai was amply supported by the record.

### 2. COS Antonio did not violate Plaintiff's First Amendment right to freely exercise his religion

As to Plaintiff's free exercise claim against COS Antonio, the District Court correctly concluded that COS Antonio's action was taken "with a lawful justification . . . to bring down tensions between Plaintiff and [Sergeant] Sugai" and was reasonably related to a legitimate penological interest. *Id.* at 81.

Applying the same *Turner* analysis, the District Court reviewed policy number COR.18.01.3.2a[5] and found that "[t]he governmental interests behind that regulation–institutional security and integrity of investigations–are due significant deference" and that such interests are valid and rationally connected to COR.18.01.3.2a. *Id.* The District Court found that the second *Turner* factor weighed against COS Antonio because "there were no alternative means for

---

[5] COR.18.01.3.2a provides the definition for administrative segregation and states "[i]nmates may be segregated on a temporary basis from the general inmate population . . . when their continued presence in general population presents an immediate threat to the safety of self or others, jeopardizes the integrity of an investigation . . ., or endangers institutional security." *Id.* at 81.

Plaintiff to exercise his religious practice of attending Jumu'ah prayer services[.]"
*Id.* at 81–82.

The third *Turner* factor weighed "strongly in favor of [COS] Antonio"
because "there would have been a significant impact on institutional security given
the rising tensions between [Sergeant] Sugai and Plaintiff" had Plaintiff been kept
at MF. *Id.* at 82. The District Court explained that if COS Antonio instead
transferred Sergeant Sugai transferred elsewhere, "HCF would have needed to
dedicate resources to comply with the union rules governing the transfer of an
ACO . . . further delaying the separation of Plaintiff from [Sergeant] Sugai and
thus also threatening institutional security." *Id.* The final *Turner* factor weighed in
favor of COS Antonio because "[t]here was no ready alternative to transferring
Plaintiff to [HF]" and transporting Plaintiff between the facilities to attend Jumu'ah
prayer services "was also not practical given the required personnel commitments."
*Id.* at 83.

Plaintiff contends that the District Court's findings in favor of COS Antonio
on the first and third *Turner* factors were "based upon the unsupported notion that
[Plaintiff] was a security threat[.]" OB at 63. Plaintiff further argues that the
District Court made an "impermissible and unreasonable inference from testimony
at trial that it would take additional resource to transfer [Plaintiff] to attend
Jumu'ah prayer services." *Id.* He reasons that trial testimony "never established

that any additional resources would be needed to transfer [Plaintiff] to [MF]"

because "transport services were already running between the two facilities." *Id.* at

64–64. Plaintiff's arguments lack merit.

The District Court explained that if COS Antonio left Plaintiff in MF, where

Jumu'ah services were being held, "there would have been a significant impact on

institutional security *given the rising tensions between [Sergeant] Sugai and*

*Plaintiff*." *Id.* at 82 (emphasis added). And that if COS Antonio wanted to transfer

Sergeant Sugai "HCF would have needed to dedicate resources to comply with the

union rules governing the transfer of an ACO– . . . further delaying the separation

of Plaintiff from [Sergeant] Sugai and thus also threatening institutional security"

if COS Antonio were to transfer Sergeant Sugai instead of Plaintiff. *Id.*

Contrary to Plaintiff's arguments, the District Court's findings were properly

supported by COS Antonio's testimony as to the "infeasibility of transporting

Plaintiff to the [MF] to attend that facility's Jumu'ah prayer services[.]" *Id.* at 71.

The District Court found COS Antonio's testimony to be credible, true and

accurate, and explained "that in order for Plaintiff to attend services in the [MF],

Plaintiff would need to be transported by vehicle in full restraints with a dispatch

of security officers that would remain with Plaintiff while he attended the Jumu'ah

service." *Id.* Logically, this would mean that the security officers assigned to

transport Plaintiff between the facilities would not be able to engage in their other

duties during that time. The District Court's dismissal of Plaintiff's free exercise claims against COS Antonio was properly supported by evidence.

### 3. Sergeant Sugai did not retaliate against Plaintiff

The District Court correctly concluded "Plaintiff failed to prove his retaliation claim [because Sergeant] Sugai either took no adverse action or, if he did, his action reasonably advanced legitimate correctional goals." 1-ER-54. And "although Plaintiff has shown that [Sergeant] Sugai took adverse actions by ordering him to eat in his housing unit on multiple occasions, those actions clearly advanced legitimate correctional goals." *Id.* at 87. Specifically, the District Court found that although Sergeant Sugai directed Plaintiff to eat in his housing unit on several occasions, Sergeant Sugai "did so because of escalating conflicts between Plaintiff and the kitchen staff, not because of some vindictive motive." *Id.* at 66.

Plaintiff argues that the District Court "cited to its previous conclusion that [Sergeant] Sugai's actions were related to a legitimate correctional goal, which . . . was based on the conclusion that [Plaintiff] was a threat to security." OB at 58. Plaintiff adds that "the court resolved those claims based on the idea that [Plaintiff] posed a 'significant threat' to institutional security at the [MF]." *Id.* Again, Plaintiff's arguments misstate the District Court's findings. As stated above, the only "significant threat" was that of "*escalatory behavior* that needed immediate attention." 1-ER-78 (emphasis added). And the District Court found that Sergeant

35

Sugai's orders were not based on any vindictive motive but in response to the escalating conflicts between Plaintiff and the kitchen staff. *Id.* at 66. The District Court's dismissal of Plaintiff's retaliation claims against Sergeant Sugai was proper.

## VIII. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that this Court affirm the District Court's Judgment.

DATED: Honolulu, Hawai'i, June 23, 2023.

Respectfully submitted,

ANNE E. LOPEZ
Attorney General of Hawai'i

/s/ Caron M. Inagaki
CARON M. INAGAKI
JENNIFER H. TRAN
Deputy Attorneys General

Attorneys for Defendants-Appellees
Rodney Sugai and Lyle Antonio

## STATEMENT OF RELATED CASES

*De Witt Lamar Long v. Chaplain Charles Noland Jr., et al.*, No. 1:21-cv-00205-

HG-RT (D. Haw.) (asserting similar First Amendment free exercise claims against

Defendants).

## CERTIFICATE OF COMPLIANCE FOR BRIEFS

Pursuant to Federal Rules of Appellate Procedure ("FRAP") Rule 32(a)(7)(C), I hereby certify that:

This brief complies with the type-volume limitation of FRAP Rule 32(a)(7)(B)(i) because this brief contains 8,182 words, excluding the parts of the brief exempted by FRAP Rule 32(f).

This brief complies with the typeface requirements of FRAP Rule 32(a)(5) and the type styles requirements of FRAP Rule 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

DATED:      Honolulu, Hawaiʻi, June 23, 2023.

Respectfully submitted,

ANNE E. LOPEZ
Attorney General of Hawaiʻi

/s/ Caron M. Inagaki
CARON M. INAGAKI
JENNIFER H. TRAN
Deputy Attorneys General

Attorneys for Defendants-Appellees
Rodney Sugai and Lyle Antonio

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed Defendants-Appellees'

Answering Brief with the Clerk of the Court for the United States Court of Appeals

for the Ninth Circuit by using the appellate CM/ECF system on June 23, 2023.

DATED:    Honolulu, Hawai'i, June 23, 2023.

Respectfully submitted,

ANNE E. LOPEZ
Attorney General of Hawai'i

/s/ Caron M. Inagaki
CARON M. INAGAKI
JENNIFER H. TRAN
Deputy Attorneys General

Attorneys for Defendants-Appellees
Rodney Sugai and Lyle Antonio